Good morning, Your Honors. May it please the Court, my name is Helen Holden and I represent the appellants, Derwin Sims and David Weber. With me in the courtroom today are my colleague, Renee Gerstmann, and Mr. Sims and Mr. Weber are also here. This matter presents two issues for determination on appeal. The first relates to the applicability of one of Arizona's borrowing statutes to an action to enforce a sister state judgment. What's the basic question? Why isn't this case controlled by Bailey and Wood? Well, Your Honor, we submit that the case is controlled by Wood and not Bailey. Bailey does not apply because Section 12-507 is not applicable to an action to enforce a judgment because the action is not incurred in another state. We submit that 12-507 applies only in very limited circumstances. Those circumstances are not presented here. Moreover, you can analyze 12-507 in looking at the language of the statute. The last line of the statute refers to the state from which the debtor migrated. Here, that state is Delaware. No one here thinks that the law of Delaware has anything to do with this case. The judgments remain valid in Arkansas. The Arizona statute is a four-year statute and ought to be told until the time that the debtors move into the state. And I direct you to the language in Wood in which the Supreme Court of Arizona says that it would be incongruous to have an action begin to run before the debtor comes into the state. And there, the Supreme Court was referring to New Mexico law. However, it also stated that Arizona law was similar to New Mexico law and was the same, citing Selby v. Carman. So here, 12-501 does apply. Well, in looking at 12-501, such action may be brought against the person after his return to the state. Doesn't that imply that 12-501 is really concerned more with people who were in the state than to leave the state, maybe to avoid the lawsuit or maybe for other purposes? But isn't the principal concern the concern that someone's statute should not run when the person who is being sued is not subject to service in the state? Well, that is exactly correct. And here, the defendants were not subject to service in the state until March of 2004. General personal jurisdiction could not be obtained until that time. The language returned to the state. Everybody that would come into the state, you'd give them an additional 4 years to effectuate the judgment or to effectuate the collection effort? Well, it wouldn't necessarily be 4 years, but the statute would not begin to run until jurisdiction could be had over the person. So if the judgment ---- Wouldn't it be a 4-year statute limitation then as to any debtor who came into your state? Yes, unless the judgment subsequently became invalid in the rendering state. So if the judgment becomes ---- They have the other statute then where under 507 where they specifically set out a 1-year period when someone's, you know, come into the ---- removed to the state. 507 applies if the only ---- harmonizing Monroe and Bailey. 507 applies when the action is incurred out of state. And the judicial construction on the language incurred without the state refers to an action arising under another state's laws. As we've demonstrated in the briefs, an action to enforce the judgment is not incurred out of state. It's subject to the control of Arizona law. Getting back to 501 and the language of return, the judicial construction of that statute has almost uniformly been held to mean come within the state for the first time. And in Western Mining versus ---- Not in Arizona. Well, it's actually an open question in Arizona. In Western Mining versus Hilbert, the Arizona Supreme Court used the language that it applies to residents and non-residents alike. In doing so, the Supreme Court referred to a 19th ---- I'm sorry, an 1803 or 1808 case from New York called Ruggles versus Keillor. And in that case, the language returned to the state was construed by the New York courts. And the court there explained that the language came from the Statute of Anne in England and it came from English law and has been uniformly construed both in English law and American law up to that point. And that would be 200 years ago to mean come within the state. What position does Texas take? Texas takes a differing position. Doesn't Arizona look to Texas on this issue? Well, Arizona law has already departed from Texas law. Selby versus Carman held that come within the state means in the sense of personal jurisdiction being able to be obtained. Texas law rejects that construction. Texas law requires that the person ---- that personal jurisdiction is irrelevant. It means literally within the state. So the statute can run and be told simply by the person coming into the state and leaving the state. Very indirect arguments. We've got two cases that I asked you about. One, the Court of Appeals case, which is Bailey, which seems clearly to go the other way. I don't know what about Wood you think helps you. Wood says Arizona has a borrowing statute which is designed to accommodate situations wherein a nonresident moves to Arizona. And then it states 507. Now, I don't know where you find something that helps you in Wood. Could you tell me what it is? Well, the language in Wood says that, for example, it says it would be incongruous when it's referring to the New Mexico law to have the statute run before the defendant could be ---- personal jurisdiction could be obtained over the defendant. Where does it say it's incongruous? Tell me. It would be incongruous indeed if the statute of limitations began to run in New Mexico before the dispute could even be ruled upon there. That's correct. But then it says that 12507 applies to people who move to Arizona, when a nonresident moves to Arizona. Well, it says that 12507 applies in the first year when people move to Arizona. It looks to New Mexico law, not Colorado law. It looks to New Mexico law, the state from which the defendant migrated. And I think that's a critical distinction here. In addition ---- Well, I don't ---- whatever law you look to to see what the statute of limitations was, they say that 507 applies, and that means that they can ---- if you come to the State, well, there's still a live case, whether it's New Mexico, Colorado, wherever it is, then they can't sue you for a year. I mean, that's ---- they apply 507. You want them to apply 501. Yes, Your Honor, because 507 simply does not apply. Our contention is ---- That's what you say. But it seems to me that it would as well as barely. And all we're doing here is trying to find out what ---- how Arizona courts apply an Arizona statute or two Arizona statutes. Well, to the extent that that's an open question ---- Why doesn't it apply 507? Well, to the extent that there's an open question, because neither case involves an action on a judgment, we would submit that certification ---- Let's go back to a different thing. Okay. Now you're saying that not that 507 doesn't generally apply, but that it doesn't apply to a judgment. Well, that's correct, Your Honor. That has been our contention. Would you like me to continue? I see I'm running out of time. Well, that's all right. But why is it that a judgment ---- we'll give you two minutes for rebuttal. Why is it that it doesn't apply to a judgment? Why doesn't the statute, why doesn't 507 apply to a judgment? If you look at the case Pan Energy v. Martin, which is a Utah Supreme Court case that involved an action on a judgment, the Utah court there said we're not going to apply a borrowing statute because the action arises under Utah law. And that would be the same situation here. The action arises under the law that creates the cause of action, as Justice Holmes famously stated. Which would be Arkansas? No. The law that creates the cause of action, the action on the judgment, would be Arizona law. Therefore, the borrowing statute, 507, would not apply. Our argument is that this arises under Arizona law because the action itself, as the Supreme Court stated in Baker v. General Motors, the action itself is governed by ---- How could Arizona have created the action under which you're ---- I have to say, I'm quite confused. This is an Arkansas judgment. The folks then moved in the meantime to Delaware. We might have tried to enforce the judgment in Delaware. By the time they get to Arizona, this is their third state. So I'm a little confused that Arizona is creating ---- I understand that Arizona has a means for enforcing out-of-state judgments, but that's just a consequence of the full faith in credit clause. Well, that's correct. Each state has its own mechanism for enforcing judgments. The action to enforce and recognize the judgment, though, is a creature of the local law of the state where the debtor is situated. So that if we move to California or North Dakota or if the debtor were to move to Hawaii, the action would be governed by Hawaii law. The underlying cause of action becomes merged into the judgment, and by creating a new judgment, you have new effects. You have res judicata, you have full faith in credit. So coming into Arizona, the action on the judgment is governed by Arizona law. The defenses to it, the statute of limitations, are governed by Arizona law. Thank you, Your Honor. Thank you. May it please the Court, Your Honors. My name is Thomas Whalen. I represent the housers in this matter. To address right away Ms. Holden's contention that there was a departure from Texas law occurring some 140 years ago, the Uniform Enforcement of Foreign Judgments Act was established at the Conflicts of Law Conference in 1963, where these rules were adopted. Could you speak up a bit? I apologize, Your Honor. Maybe you should get closer to the mic. The Uniform Enforcement of Foreign Judgments Act and the relative cases and the law that they derived from were established in 1963. Shortly after 1963 came Phillips v. Anchor-Hawking Glass, Hawkins-Tyre, Selby, and all of those cases vacated the standard of personal jurisdiction as a means by which to determine whether or not to apply 12501. In the case of Goodwin v. Hewlett, cited by the appellants, the Court held that if the out-of-state party is amenable to service, there is no application of 501. The housers were always amenable to service. They've never not been able to be served. That's never been a question. 501 cannot apply under Arizona's rules because, as the Court pointed out, one of the statutes is a being here and going from. 501 preserves the claim when you are absent. Absent is defined under Selby as unable to be served by process. In Goodwin, if you are available for service or process, then 501 has no application, and this is affirmed in Selby. You're talking about process in Arizona or process anywhere? Anywhere. Anywhere. And they talk about long-arm statutes. In this case, the housers lived in Delaware when the cause of action arose in Arkansas. They were served in Delaware. They were served with the notice of judgment in Delaware. They moved to Arizona prior to but verified on March 17, 2004. They have been served and received and have never evaded service. 501 has no application. On the other hand, 12-507 specifically states that it's for out-of-state residents coming to reside in Arizona. There are arguments in the briefs that the appellants contend that 501, because it relates to residents and non-residents alike, therefore must apply to the housers. This is a post hoc ergo proctor hoc argument which ignores the application of 507, which only applies to out-of-state residents coming into the State. I just out of curiosity, could you explain your answer to Judge Blybee? As far as 501 is concerned, as I read it, I thought it told the time that a resident was absent from the State. If an Arizona resident went to Delaware, that time was told regardless of whether they can be served in Delaware in the Delaware Act. If they removed from the State and also the public policy behind 501 is to preserve a claim to prevent a defendant from absenting himself in order to defeat the claim. That is also not the case here. No, no, no, but it doesn't matter whether he can be served in Delaware if they try to enforce it in Delaware. Nobody tried to enforce it in Delaware. I'm not asking. I'm just asking about your explanation of the meaning of the statute. And I thought you were telling Judge Blybee the tolling only applies if he's not subject to service in any State for anything. If he's in the State or if he's out of the State, if he cannot be served, whether by evading, which would have to be proved, or if he's unavailable in another jurisdiction. That's just not what 501 says. 501 says if you're outside the State at the time the cause of action accrues, meaning you cannot be sued in Arizona at the time, then the statute of limitations is tolled. When you come back to Arizona, then the statute of limitations starts to run. For causes of action arising in Arizona. I don't – I think that's probably correct. For a cause of action accruing in Arizona. This cause of action is an Arkansas cause of action that is merged and reduced to a judgment in Arkansas. Which is why the district court applied Section 507. The district court recognized the Arkansas judgment under 507, which expressly defines it as an executed instrument from a foreign jurisdiction. That's what Judge Snow held at the trial court level. The judgment itself and all the supporting case law states that the limitations period under 12-544-sub-3 begins to start elapsing the minute the judgment is applied. It is entitled to full faith and credit in any State. Ten days after it is issued in Arkansas, it is entitled to full faith and credit in any State in the United States. That is the time that 12-554-sub-3 begins to elapse with regard to the four-year statute of limitations. The Haussers came in and kept in correspondence not only with Mr. Sims and Mr. Hausser, he also stayed in contact with the original judgment creditor who had already collected the collateral on the subject loans. Nobody knows what this judgment is worth, but we do know that the original judgment creditor had no interest in pursuing it in Arizona. The underlying loans were only 65 percent loan to collateral value. The reason this was a default case was that Mr. Hausser assumed that the collateral would cover the judgments. No one in Arkansas ever accounted for the offsets to the judgment. When Mr. Sims and Mr. Hausser. I know that has a lot to do with this question, really, of which statute applies. Understood, Your Honor. Thank you. The issue presented to the Court is whether or not personal jurisdiction is the standard. Personal jurisdiction is not the standard. The appellants ignore the fact that Western Coal Mining was superseded by Hawkins Tire and Phillips v. Anchor Glass. See, this was a firm in Selby some five years after Hawkins. It is service of process. Service of process has never been an issue. The original judgment. Can you comment on your opposing counsel's explanation that whatever the rule is in a basic class of action, that when it's enforcing a judgment, there's a different rule? There is no different rule in enforcing the judgment. The appellees agree with the trial court. Bailey and Wood are on point. Wood is confusing because of the three States and the relation back to the laws and But they're both on point. Bailey was denied under the same exact premise and factual situation that Mr. Hauser is in. The only difference is that the demand was action on a note rather than a judgment, which is an executed instrument from a foreign jurisdiction. The second issue is a little difficult to understand. We agree that it is that the enforcement of a foreign judgment is controlled by Arizona law, which is why we agree that 12507 applies. Arizona courts have also affirmed, Bailey and through Wood, that 12507 is the proper  Also, the appellant is incorrect in their brief where they say that the holding in Bailey was somehow anomalous, that it would have created something that was unworkable. That's just simply not true. If a party moves to Arizona on the last day that the foreign judgment is good and the judgment creditor within a year of moving, of that relocation naturalizes the judgment, there is a situation where the Arkansas judgment can be expired and the Arizona judgment can get a fresh 5 years if it's naturalized within that year. It's based on the date the party arrives in the State. So there is, this also applies to equal protection. They say they are denied some type of equal protection in their briefs. Actually, in that scenario, they are provided more protection than an Arizona judgment, which only lasts for 5 years. Arizona, all of the controlling case law dictates that the form State controls the procedure for judgments. The Supreme Court Why do they get an extra 5 years instead of an extra 1 year? Because as soon as you I'm sorry, Your Honor, I probably wasn't clear. When they move here, you have a year to naturalize the judgment. Once the judgment is naturalized, it has all the rights of an Arizona judgment, including its duration of 5 years, and renewable after that 5 years indefinitely. That's not available to in-State residents, but 10 years from the date of an Arkansas judgment, had the housers moved here on the last day that that judgment was valid, and 6 months later, the judgment creditor found out about it. Even though it was expired, they could go back and naturalize it under 12507, which makes 12507 more applicable to judgments. Another issue is that 12507 specifies demands which can include judgments. 12501 specifically refers to causes of action. The cause of action is merged to a judgment after the judgment becomes final. These Your opponents here could have naturalized it, whatever that means? Registered the judgment in Arizona under full faith and credit. So that's the alternative remedy. Sorry, Your Honor? The alternative remedy, other than seeking to enforce the Arkansas judgment? No. What I'm saying is the judgment has to be recognized in Arizona before it is enforceable. That judgment can be enforceable for up to 364 days in a situation, an additional 364 days. It can be naturalized even after it expires in the previous State, because Arizona looks to the date that, in this case, the housers got here. In the hypothetical that I gave, it would look to the date that the judgment creditor arrived in the forum. One year from that date is the last day that the judgment creditor can naturalize the judgment. On that last day, if the judgment is still good in the issuing State, then they are given the extra year to naturalize it. Arizona, all of Arizona's laws are consistent with making sure that the judgment creditors are conscientious. Arizona also has case law that confirms that you must, that a statute of limitations can be relied upon by Arizona residents as final to prevent economic uncertainty. This is one of those cases. The houses are in their 70s. They're a retired couple. Okay. Well, that doesn't really change the law. Thank you, Your Honor.  Thank you. Thank you, Your Honor. I would like to point the Court to the Arizona public policy as explained by the Arizona Supreme Court in the Smith case, which is a 2004 case, where the Court explained that public policy favors tolling when a judgment creditor is precluded from enforcing a valid judgment by circumstances imposed outside of his control. And that case involved a domestic judgment. But the policy ought to be the same in terms of tolling of a judgment. And I would also ---- What was outside of their control here? I'm sorry? What was outside of your client's control? Well, the way the defendants were moving around. They're moving to Delaware and then to Arizona. It's not in our client's control where the defendants find themselves. We would submit that 12507 also ---- Well, the real problem, counsel, is that your clients didn't acquire the rights to bring this cause of action until very late in the process. Well, it's true that they didn't acquire, that they were not assigned the judgments until October 2007. But they do step into the shoes of the prior judgment creditor, and we think that that's a distinction without a difference. We're not arguing that they have some special status as a result of acquiring the judgment later. Right. But just as a functional matter, the bank could have tried to track them down in Delaware, could have tried to bring the action in Arkansas, could have brought it within a year after they moved to Arizona. Well, once the Arizona statute of limitations, once the defendant can plead the statute of limitations, that statute comes with the tolling requirements. And I would submit to the court that, for example, if it were a personal injury cause of action such as the one in Wood and the plaintiff were a minor, that cause of action would be tolled until majority. There's no one would think that that would be caught. We're not dealing with minors. No, we're not. But we are dealing with the application of a tolling statute similar to the minority statute. And so we submit that 507, once it would apply, we contend it does not apply here, because even under the language of Bailey, the language of Bailey says that 507 permits the statute of limitations of the state in which the cause of action accrued. And here the cause of action on the judgment is distinct from the cause of action, the underlying note. So the cause of action to enforce the judgment accrued in Arizona and would accrue separately if the defendants were, for example, to move to Nevada next week. That is our primary contention, that 507 simply does not apply. But once it applies, it comes with tolling. Once the trial court did not explain the reasoning, nor did the court in Bailey, why. I'm sorry. When the cause of action, you think that the cause of action that accrues here is the Arizona judgment? No. The cause of action to enforce. Is the Arizona foreign judgment provision. Correct. It's the action to enforce the Arizona, whether one goes through. That is the cause of action that accrues, which accrued when? It accrued when the debtors, well, it would be told until the debtors moved into the state. That's not what 501 says. It says they're without the state at the time the cause of action accrues. Under your definition of the cause of action, the cause of action does not accrue until they move to Arizona. At that point, they're not without the state. No, Your Honor, there's a slight distinction there. Grinberg v. Schaefer held, and that was a 2007 Arizona court of appeals case. And that, the court there held that the cause of action accrues when the judgment becomes final and enforceable in the rendering state. So that's when the cause of action accrued. Our argument is that the argument that the cause of action is then told until the debtor comes into the state. There is a slight distinction, and it's an important one. Thank you, counsel. The case just argued will be submitted.
judges: Gwin, Reinhardt, Bybee